No. 11-1477

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

BRIAN HUNTER,
Petitioner, and

COMMODITY FUTURES TRADING COMMISSION,
Intervenor,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
Respondent.

_____

*On Petition for Review of Orders of the Federal Energy Regulatory Commission in Docket No. IN07-26-007*

_____

**BRIEF OF INTERVENOR
COMMODITY FUTURES TRADING COMMISSION**

_____

Dan M. Berkovitz
General Counsel

Jonathan L. Marcus
Deputy General Counsel

Mary T. Connelly
Assistant General Counsel
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C.  20581
(202) 418-5866
mconnelly@cftc.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(A)    Parties and Amici

All parties, intervenors, and amici appearing below or in this Court are listed in the Brief for Petitioner.

(B)    Rulings Under Review

References to the ruling at issue appear in the Brief for Petitioner.

(C)    Related Cases

This case has not been before this Court or any other court. Related cases previously before this Court are *Amaranth Advisors LLC, et al. v. FERC*, No. 07-1491, *Hunter v. FERC*, Nos. 08-5380, 10-1017, and 11-1236, and *In re Brian Hunter*, No. 09-1285. There is also a related case pending in the United States District Court for the Southern District of New York, *CFTC v. Amaranth Advisors LLC, et al.*, No. 07-CV-6682.

i

# TABLE OF CONTENTS

                                                                    Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

TABLE OF AUTHORITIES ................................................................iv

GLOSSARY ...........................................................................viii

INTRODUCTION..........................................................................1

ISSUE..................................................................................3

STATUTES AND REGULATIONS ..........................................................3

STATEMENT OF THE CASE..............................................................3

I.    The CFTC's Enforcement Action Against Brian Hunter ...........3

II.   FERC's Enforcement Action .....................................5

   A.   The Order To Show Cause....................................5

   B.   Subsequent Orders Addressing Jurisdiction .................6

   C.   Final Orders...............................................7

SUMMARY OF THE ARGUMENT .......................................................8

STANDARD OF REVIEW ...........................................................10

ARGUMENT ......................................................................11

I.    Congress Granted The CFTC Exclusive Jurisdiction Over
      Futures Trading ...............................................11

   A.   The Commodity Exchange Act Expressly Confers On The
        CFTC Exclusive Jurisdiction Over Futures Trading On The
        NYMEX ...................................................11

   B.   The Legislative History Of The CEA Confirms The CFTC's
        Exclusive Jurisdiction With Respect to Futures Trading On
        Futures Exchanges ........................................13

C.    Courts Have Consistently Recognized The CFTC's Exclusive Jurisdiction Over Futures Trading On Futures Exchanges Regulated By The CFTC ...................................... 18

    1.    This Court's Decision In Ken Roberts Is Fatal To FERC's Position .................................................................. 18

    2.    Other Decisions Refute FERC's Position ............................... 20

D.    FERC's Assertion that the CFTC Does Not Have Exclusive Jurisdiction Cannot Be Reconciled With The CEA, Its Legislative History, Or Case Law .......................................... 24

II.    FERC's Anti-Manipulation Authority in the NGA Does Not Limit the CFTC's Exclusive Jurisdiction .................................... 25

A.    Nothing In The EPAct Repeals Or Otherwise Modifies The CFTC's Exclusive Jurisdiction ............................................. 27

B.    Acceptance Of FERC's Position Would Result In Partial Repeal By Implication Of The CEA's Exclusive Jurisdiction Provision ............................................................. 28

C.    A Comprehensive Savings Clause In The EPAct Was Unnecessary .......................................................... 32

D.    The Legislative History Of The EPAct Reveals That Congress Intended To Ban Manipulation In Physical Natural Gas Markets, Not Futures Markets ...................................... 35

CONCLUSION ........................................................... 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

*Agri Processor Co. v. NLRB,
  514 F.3d 1 (D.C. Cir. 2008)..................................................................29, 31

Alabama Rivers Alliance v. FERC,
  325 F.3d 290 (D.C. Cir. 2003)...........................................................10

American Agric. Movement, Inc. v. Board of Trade of City of Chicago,
  977 F.2d 1147 (7th Cir. 1992), aff'd in part, rev'd in part on other grounds
  by Sanner v. Chicago Bd. of Trade, 62 F.3d 918 (7th Cir. 1995).......................23

*Board of Trade of the City of Chicago v. SEC,
  677 F.2d 1137 (7th Cir. 1982), vacated as moot on other grounds, 459
  U.S. 1026 (1982)........................................................................21, 23

Branch v. Smith,
  538 U.S. 254 (2003).......................................................................29, 30

*Brown v. Gen. Servs. Admin.,
  425 U.S. 820 (1976)..........................................................................31

Bullcreek v. Nuclear Regulatory Comm'n,
  359 F.3d 536 (D.C. Cir. 2004).................................................................33

*Carcieri v. Salazar,
  555 U.S. 379 (2009)...........................................................................29

Chicago Mercantile Exch. v. SEC,
  883 F.2d 537 (7th Cir. 1989) ..................................................................22

Department of Treasury v. FLRA,
  837 F.2d 1163 (D.C. Cir. 1988)..............................................................10

*FTC v. Ken Roberts Co.,
  276 F.3d 583 (D.C. Cir. 2001)....................................... 6, 14, 16, 18, 19, 22, 25

Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,
  530 U.S. 238 (2000)...........................................................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,
    456 U.S. 353 (1982)........................................................... 11, 14, 22, 31

Messer v. E.F. Hutton & Co.,
    847 F.2d 673 (11th Cir. 1988) ...........................................22

Mordaunt v. Incomco,
    686 F.2d 815 (9th Cir. 1982) .............................................23

Ohio Power Co. v. FERC,
    880 F.2d 1400 (D.C. Cir. 1989), rev'd. on other grounds sub nom.,
    Arcadia, Ohio v. Ohio Power Co., 498 U.S. 73 (1990)......................................10

Point Landing, Inc. v. Omni Capitol Int'l, Ltd.,
    795 F.2d 415 (5th Cir. 1986), aff'd on other grounds, 484 U.S. 97 (1987) ........22

Rodriguez v. United States,
    480 U.S. 522 (1987)........................................................29

Salleh v. Christopher,
    85 F.3d 689 (D.C. Cir. 1996) .............................................10

*SEC v. American Commodity Exch., Inc.,
    546 F.2d 1361 (10th Cir. 1976) ...........................................21, 23

*SEC v. Univest, Inc.,
    405 F. Supp. 1057 (N.D. Ill. 1975), remanded without op., 556 F.2d 584
    (7th Cir. 1977)............................................................20, 21

Shomberg v. United States,
    348 U.S. 540 (1955)........................................................33

United States v. Fausto,
    484 U.S. 439 (1988)........................................................29

*Universal Interpretative Shuttle Corp. v. Washington Metropolitan Area
    Transit Comm'n,
    393 U.S. 186 (1968)........................................................30

STATUTES

Commodity Exchange Act,  7 U.S.C. § 1 et seq. (2006)

*7 U.S.C. § 2(a)(1)(A) ........................................ 8, 9, 11, 12, 13, 14, 19, 20, 24, 25

7 U.S.C. §  2(a)(1)(C) ...................................................................................16

7 U.S.C. § 2(a)(9) ...........................................................................................28

7 U.S.C. §§ 2(c) – 2(h) ...................................................................................12

7 U.S.C. § 12(e) ..............................................................................................28

7 U.S.C. § 13(a)(2) ...........................................................................................4

7 U.S.C. § 16(a) ..............................................................................................28

CFTC Reauthorization Act of 2008, P.L. 110-246, § 13203(c), 122 Stat. 1651.....16

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010) ..................................................3, 16, 17

Pub. L. No. 111-203, § 722(a) ........................................................................17

Pub. L. No. 111-203, § 722(g), 124 Stat. 1376, 1674 (2010), codified at 15 U.S.C.A. § 8322 (2011) ...................................................................................17

15 U.S.C.A. § 8322 (2011)…………………………………………………....…17

Natural Gas Act, 15 U.S.C. 717 et seq. (2006)

15 U.S.C. § 717(b) ......................................................................................7, 17

Energy Policy Act of 2005, Pub. L. No. 109-58, § 315 (amending Section 4A of the Natural Gas Act)…………………………………………............. 2, 25, 26, 31

15 U.S.C. § 717c-1 .................................................................................5, 7, 26

15 U.S.C. § 717t-1(c) .....................................................................................35

15 U.S.C. § 717t-2(c) ...............................................................................27, 28

## OTHER AUTHORITIES

18 C.F.R. § 1c.1 ("Rule 1c.1")....................................................5, 26

H.R. Rep. No. 93-975 (1974)..................................................14, 15

S. Rep. No. 93-1131 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 5843.....................................................................................15

H.R. Rep. No. 93-1383 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 5894 ......................................................................15

120 Cong. Rec. H 34,736 (Oct. 9, 1974)…………………………………16

S. Rep. No. 97-384 (1982) .......................................................16

H.R. Rep. No. 109-49 (2005).....................................................34

151 Cong. Rec. H2399 (daily ed. April 21, 2005)......................37

156 Cong. Rec. S3890 (daily ed. May 18, 2010)........................17

156 Cong. Rec. H5054 (daily ed. June 29, 2010).......................17

H.R. Rep. No. 111-517 (2010) (Conf. Rep.) ..............................17

Philip F. Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy,* 29 Vand. L. Rev. 1 (1976) ......................23

Philip F. Johnson, *The Perimeters of Regulatory Jurisdiction Under the Commodity Futures Trading Commission Act,* 25 Drake L. Rev. 61 (1975-76) ..................................................................................23

*Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY

| | |
|---|---|
| CFTC | Commodity Futures Trading Commission |
| CEA | Commodity Exchange Act |
| EPAct | Energy Policy Act of 2005 |
| FERC | Federal Energy Regulatory Commission |
| NGA | Natural Gas Act |
| NYMEX | New York Mercantile Exchange |
| OSC | Order to Show Cause and Notice of Proposed Penalties (July 26, 2007) |
| SEC | Securities and Exchange Commission |

No. 11-1477
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

BRIAN HUNTER,
Petitioner, and

COMMODITY FUTURES TRADING COMMISSION,
Intervenor,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
Respondent.
_____

*On Petition for Review of Orders of the Federal Energy Regulatory Commission in
Docket No. IN07-26-007*
_____

**BRIEF OF INTERVENOR
COMMODITY FUTURES TRADING COMMISSION**
_____

### INTRODUCTION

Brian Hunter challenges the authority of the Federal Energy Regulatory
Commission ("FERC") to bring an administrative action charging him with
manipulating the settlement prices of natural gas futures contracts traded on a
futures exchange regulated by the Commodity Futures Trading Commission
("CFTC") through his trading of futures contracts on that exchange. While
recognizing that Congress granted the CFTC "exclusive jurisdiction" over futures

trading conducted on CFTC-regulated exchanges, FERC claims that Mr. Hunter's futures trading conduct violates the Natural Gas Act ("NGA") because it affected physical natural gas prices.  FERC claims that it possesses jurisdiction to prosecute that futures trading pursuant to authority granted to it by Congress under the Energy Policy Act of 2005 ("EPAct")  (amending the NGA).

The CFTC intervened in this appeal because FERC's assertion of jurisdiction directly conflicts with the express statutory grant of exclusive jurisdiction to the CFTC over futures trading on futures exchanges.  The text of the Commodity Exchange Act ("CEA"), the legislative history of the statute, and the case law interpreting and applying the exclusive jurisdiction provision in the CEA establish beyond cavil that FERC has no jurisdiction over the futures trading at the heart of this case, and nothing in the EPAct indicates otherwise.[1]

---

[1] The CFTC intervened in support of Mr. Hunter solely for the purpose of briefing and arguing whether FERC may lawfully exercise jurisdiction over the futures trading at the core of FERC's administrative case in view of the CFTC's grant of exclusive jurisdiction over on-exchange futures trading.  The CFTC does not associate itself with Mr. Hunter's other positions on appeal.

## ISSUE

Whether Congress, in granting FERC new anti-manipulation powers in the EPAct (amending the NGA), and authorizing FERC to promulgate implementing rules, in any way limited the CFTC's longstanding exclusive jurisdiction under the CEA over futures trading on futures exchanges.

## STATUTES AND REGULATIONS

The applicable provisions of the CEA and NGA are reprinted in the Addendum to this brief.[2]

## STATEMENT OF THE CASE

### I.    The CFTC's Enforcement Action Against Brian Hunter

On July 25, 2007, the CFTC filed a civil enforcement action against the hedge fund Amaranth[3] and its chief natural gas trader, Brian Hunter. *CFTC v. Amaranth Advisors LLC, et al.*, No. 07-CV-6682 (S.D.N.Y.).

---

[2] Unless otherwise indicated, statutory references are to those provisions in effect in 2006 and 2007, when the futures trading at issue occurred and FERC brought its administrative action. Some of the cited CEA provisions were subsequently amended in 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010) ("Dodd-Frank"). None of the amendments modify the CFTC's exclusive jurisdiction over the on-exchange futures trading at issue here.

[3] Collectively Amaranth Advisors L.L.C. and Amaranth Advisors (Calgary) ULC.

The CFTC alleges that Mr. Hunter attempted to manipulate the futures prices of the March 2006 and May 2006 natural gas futures contracts traded on the New York Mercantile Exchange ("NYMEX"), a CFTC-regulated exchange, by dumping large numbers of those contracts during the last 30 minutes of trading in an effort to drive down the closing ("settlement") price of those futures.   CFTC Compl. ¶¶ 23-68 (Dkt. No. 1).   The purpose of these actions, the CFTC alleges, was to benefit Amaranth's much larger opposing ("short") positions in off-exchange "look-alike" derivatives called swaps.   Those much larger positions would benefit if the NYMEX futures settlement price decreased.   *Id.* ¶¶ 23-30. The CFTC alleges that Mr. Hunter's conduct violated § 13(a)(2) of the CEA, 7 U.S.C. § 13(a)(2), which makes it unlawful for "[a]ny person to manipulate or attempt to manipulate the price of any commodity . . . for future delivery on or subject to the rules of any registered entity" such as NYMEX.   *Id.* ¶ 70.   The CFTC seeks injunctive relief, civil penalties, restitution and disgorgement of unjust profits.   *Id.* § VI.C-H. [4]

---

[4] The CFTC's civil action is pending.

## II.     FERC's Enforcement Action

### A.     The Order To Show Cause

The day after the CFTC filed its civil enforcement case, FERC likewise filed an administrative action against Mr. Hunter, Amaranth, and others, based on much of the same conduct alleged in the CFTC's complaint.  App. 125-203 (July 26, 2007 Order to Show Cause ["OSC"]).  Like the CFTC, FERC alleged that Hunter's trading of the NYMEX natural gas futures contracts during the relevant time period was intended to artificially depress the settlement prices for the futures contracts being traded.  App. 130, ¶ 5.   FERC alleged that Mr. Hunter's futures trading violated anti-manipulation provisions in the NGA and FERC's implementing regulations.   As relevant here, those provisions prohibit manipulation in connection with the purchase or sale of natural gas otherwise subject to FERC's jurisdiction.  Section 315 of the EPAct (adding a new Section 4A to the NGA), 15 U.S.C. § 717c-1 ; 18 C.F.R. § 1c.1 ("Rule 1c.1").  FERC claimed that Mr. Hunter's futures trading violated these provisions because the settlement price for the NYMEX natural gas futures contract serves as a "benchmark" for pricing physical natural gas contracts within FERC's jurisdiction.  App. 129, ¶ 2.

### B.    Subsequent Orders Addressing Jurisdiction

On rehearing of the OSC, FERC rejected the administrative respondents' claims that FERC lacked jurisdiction because the CEA conferred exclusive jurisdiction on the CFTC to determine the lawfulness of the futures trades at the heart of FERC's case.    App. 204-43 (November 30, 2007 order).    FERC determined that the CFTC's exclusive jurisdiction is limited to "the day-to-day aspects of futures trading (albeit not manipulation), such as the terms or conditions of sale of [natural gas] [f]utures contracts, the operating rules of the NYMEX exchange, or traders' commodity accounts."  App. 238, ¶ 58.  FERC also reasoned that "manipulation does not involve a mutual understanding or meeting of the minds necessary to consummate an 'account, agreement, or transaction'" within the meaning of the CEA's exclusive jurisdiction provision.  App. 233, ¶ 49.

FERC rejected the administrative respondents' argument that this Court's reasoning in *FTC v. Ken Roberts Co.* barred FERC's assertion of jurisdiction.  276 F.3d 583 (D.C. Cir. 2001) (reasoning that CFTC has exclusive jurisdiction over conduct surrounding futures trading on CFTC-regulated exchanges); App. 233-34, ¶ 50.  And FERC rejected as inapposite a line of federal decisions holding that the CEA's exclusive jurisdiction provision barred the Securities and Exchange Commission ("SEC") from pursuing regulatory and enforcement actions regarding exchange-traded futures contracts.  App. 233-34, ¶ 51.

6

Finally, FERC rejected the administrative respondents' argument that, irrespective of the CFTC's exclusive jurisdiction, section 315 of the EPAct did not empower FERC to reach "non-jurisdictional transactions" (*i.e.*, transactions falling outside of FERC's traditional jurisdiction set forth in 15 U.S.C. § 717(b)). App. 242-43, ¶ 65. FERC held that section 315 empowered it to bring charges with respect to non-jurisdictional transactions, such as futures trades, so long as those trades affected transactions within FERC's traditional jurisdiction. *Id.*

In later orders, FERC denied reconsideration of its jurisdictional determination, based on the reasoning in its November 30, 2007 order. App. 251 ¶ 19 (July 17, 2008 order); App. 596-97 ¶ 19 (January 15, 2010 order).[5]

### C.        Final Orders

Following an evidentiary hearing, a FERC administrative law judge determined that FERC had proven the alleged violations against Mr. Hunter. App. 601-79 (Jan. 22, 2010 Initial Decision). FERC denied Mr. Hunter's objections, affirmed the ALJ's decision, and imposed penalties. App. 766, 690-796 generally (objections); 797-852 (April 21, 2011 order). The order did not address Hunter's

---

[5] The other administrative respondents settled with FERC and the CFTC. *Amaranth Advisors L.L.C.*, 128 FERC ¶ 61,154 (Aug. 12, 2009); Consent Order and Judgment, *CFTC v. Amaranth,* No. 07-6682, (Aug. 12, 2009) (Dkt. Nos. 73 and 74).

renewed assertion that FERC lacked jurisdiction over the transactions at issue in light of the CFTC's exclusive jurisdiction. FERC thereafter denied Mr. Hunter's motion for reconsideration. As to its jurisdiction, FERC determined that Mr. Hunter raised no new arguments, and accordingly provided no basis for it to revisit its prior determination. App. 962-63 ¶ 10 (November 18, 2011 order). Hunter timely petitioned for review.

## SUMMARY OF THE ARGUMENT

The CFTC intervened in this case solely for the purpose of briefing and arguing whether FERC possesses jurisdiction with respect to the on-exchange futures trading at the heart of FERC's administrative case, especially in light of Congress's grant of exclusive jurisdiction to the CFTC over futures trading on futures exchanges.

1.     More than 30 years ago, Congress expressly conferred on the CFTC *exclusive jurisdiction* with respect to futures trading on "designated contract markets," the statutory term for CFTC-regulated futures exchanges. In addition to granting exclusive jurisdiction over futures trading to the CFTC, Section 2(a)(1)(A) of the CEA expressly provides that the authority of other federal and state regulatory agencies is superseded as to on-exchange futures trading. 7 U.S.C. § 2(a)(1)(A).

2.     The legislative history of CEA Section 2(a)(1)(A) confirms the scope of the CFTC's exclusive authority.   Congress's clearly expressed intent in entrusting a single agency with the responsibility for overseeing futures trading was to avoid duplicative and potentially inconsistent regulation by multiple federal and state government agencies.

3.     An unbroken line of decisions by this Court and others, reaching back to the 1970s, confirms that, with certain exceptions specifically listed in the CEA (none of which is relevant here), the CFTC is the only federal regulatory agency possessing jurisdiction regarding on-exchange futures trading.   As far as on-exchange futures trading goes (and subject to the exceptions mentioned above), the existence of CFTC jurisdiction *ipso facto* negates the exercise of jurisdiction by other federal agencies.

4.     The EPAct does nothing to change the scope of the CFTC's longstanding exclusive jurisdiction with respect to the on-exchange trading of natural gas futures contracts.  The only discussion of the CFTC or futures trading in the EPAct is a provision directing FERC and the CFTC to share information regarding their *respective* jurisdictional markets and to enter into a Memorandum of Understanding ("MOU") on that subject.  That provision contains a savings clause explicitly stating that requiring the CFTC to enter into the MOU should not be construed as affecting the CFTC's exclusive jurisdiction under the CEA.  Nor

9

does the legislative history of the EPAct evince any Congressional intent to narrow the CFTC's exclusive jurisdiction so as to allow FERC to prosecute allegedly manipulative on-exchange futures trading.

## STANDARD OF REVIEW

"[W]hen an agency interprets a statute other than that which it has been entrusted to administer, its interpretation is not entitled to deference." *Department of Treasury v. FLRA,* 837 F.2d 1163, 1167 (D.C. Cir. 1988); *Alabama Rivers Alliance v. FERC,* 325 F.3d 290, 296-97 (D.C. Cir. 2003). Nor is deference given to an agency decision that resolves a conflict between its own statute and the statute of another agency. *Ohio Power Co. v. FERC*, 880 F.2d 1400, 1405 (D.C. Cir. 1989) (FERC not entitled to deference where its interpretation was based on a statutory provision it did not administer and the case concerned the arguably overlapping responsibilities of FERC and the SEC), *rev'd. on other grounds sub nom.*, *Arcadia, Ohio v. Ohio Power Co.*, 498 U.S. 73 (1990); *Salleh v. Christopher*, 85 F.3d 689, 691-92 (D.C. Cir. 1996) ("we have never deferred where two competing governmental entities assert conflicting jurisdictional claims"). Given that FERC's orders are based largely on its own interpretation of the CEA, which is administered solely by the CFTC, and given that FERC's orders purport to resolve a perceived conflict between the CEA and NGA, no deference should be afforded to FERC's interpretation of the interrelationship between the two statutes.

10

**ARGUMENT**

## I. Congress Granted The CFTC Exclusive Jurisdiction Over Futures Trading

Because the exclusive jurisdiction provision in the CEA was enacted into law more than 30 years before passage of the EPAct, analysis of the jurisdictional question in this case should begin with the text and legislative history of the CEA's exclusive jurisdiction provision and the federal case law interpreting and applying that provision. These authorities plainly demonstrate that Congress gave the CFTC exclusive jurisdiction among federal regulatory agencies not only to set standards for on-exchange futures trading, but also to determine the lawfulness of such futures trading.

### A. The CEA Expressly Confers On The CFTC Exclusive Jurisdiction Over Futures Trading On The NYMEX

In 1974, Congress amended the CEA and created the CFTC. *See generally Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 365-66, 382-87 (1982) ("*Curran*") (discussing legislative history of 1974 CEA amendments). In CEA Section 2(a)(1)(A), Congress granted the CFTC "exclusive jurisdiction" over futures trading on designated contract markets. 7 U.S.C. § 2(a)(1)(A). The first sentence of Section 2(a)(1)(A) provides:

> The Commission shall have exclusive jurisdiction . . . with respect to accounts, agreements . . . and transactions

11

> involving contracts of sale of a commodity for future delivery … , traded or executed on a contract market designated or derivatives transaction execution facility registered pursuant to section 7 or 7a of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title.

7 U.S.C. § 2(a)(1)(A). This sentence makes clear that transactions involving futures contracts (*i.e.,* futures trading) on a designated contract market subject to regulation by the CFTC (*i.e.*, a futures exchange such as the NYMEX) are within the exclusive jurisdiction of the CFTC.

The next sentence of Section 2(a)(1)(A) states:

> *Except as hereinabove provided*, nothing contained in this section shall (I) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission *or other regulatory authorities* under the laws of the United States or of any State, or (II) restrict the Securities and Exchange Commission *and such other authorities* from carrying out their duties and responsibilities in accordance with such laws.[6]

---

[6] Section 2 contains exceptions from CFTC's exclusive jurisdiction for certain types of transactions, such as security futures products, as well as certain types of transactions in foreign currency and statutorily defined "excluded" and "exempt" commodities. *See, e.g.*, 7 U.S.C. §§ 2(c) – 2(h). None of these exceptions is relevant to this case, which involves trading in natural gas futures contracts on NYMEX, a designated contract market. Section 2(a)(1)(A) also states that the CFTC's exclusive jurisdiction does not "supersede or limit the jurisdiction conferred" on federal or state courts. 7 U.S.C. § 2(a)(1)(A). This proviso is also irrelevant here.

12

7 U.S.C. § 2(a)(1)(A) (emphases added). This sentence makes clear that, with respect to transactions as to which the CFTC's jurisdiction is exclusive under the first sentence of Section 2(a)(1)(A), such as on-exchange futures trading, both federal and state regulatory authorities may not lawfully exercise jurisdiction.

The plain language of Section 2(a)(1)(A) therefore vests the CFTC with sole authority among federal regulatory agencies to set standards regarding futures trading on CFTC-regulated contract markets and to adjudicate the lawfulness of such futures trading. Analysis of the jurisdictional issue in this case could very well end there. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 254 (2000) ("'analysis begins with the language of the statute … [a]nd where the statutory language provides a clear answer, it ends there as well'") (internal citation omitted).

**B.     The Legislative History Of The CEA Confirms The CFTC's Exclusive Jurisdiction With Respect to Futures Trading On Futures Exchanges**

While the scope of the exclusive jurisdiction provision in the CEA is clear from the text of the statute, the reasons for Congress's decision to confer this authority on the CFTC may not be readily apparent from the statutory text alone. Section 2(a)(1)(A)'s legislative history makes crystal clear Congress's intent that the CFTC's exclusive jurisdiction with respect to on-exchange futures trading supersedes the authorities of other government agencies.

13

Before the 1974 amendments to the CEA, questions had arisen regarding the authority of the SEC and state securities administrators to assert jurisdiction with respect to futures-related accounts and futures transactions. Section 2(a)(1)(A) was added to the CEA for the purpose of addressing these claims of overlapping jurisdiction. It was also meant to ensure that the CFTC's jurisdiction would be exclusive with respect to futures trading on futures exchanges regulated by the CFTC. This is confirmed by the legislative history, which "repeatedly emphasizes that the CFTC's jurisdiction was 'to be exclusive with regard to the trading of futures on'" futures exchanges regulated by the CFTC. *FTC v. Ken Roberts Co.*, 276 F.3d 583, 590-91 (D.C. Cir. 2001), *quoting* S. Rep. No. 93-1131 at 23, 1974 U.S.C.C.A.N at 5863; *Curran,* 456 U.S. at 386 (discussing legislative history and stating that 1974 amendments gave CFTC "exclusive jurisdiction over commodity futures trading").

For example, the Report of the House Agriculture Committee states:

> Although the expanded definition of "commodity" [in the 1974 amendments]. . . may include rights and interests which are securities as defined in the federal securities laws, *except in the area of transactions involving a contract market*, the jurisdiction of the Commodity Futures Trading Commission ... over any such rights and interest(s) is intended to exist concurrently with the jurisdiction vested in the Securities and Exchange Commission. *Accordingly . . . the CFTC's jurisdiction shall be exclusive with respect to transactions involving contracts of sale of a commodity for future delivery which are traded or executed on a contract market . . . .*

14

H.R. Rep. No. 93-975, at 28 (1974) (emphasis added).

Similarly, the Conference Report on the 1974 Commodity Exchange Act amendments states:

> The House bill provides for exclusive jurisdiction of the Commission over all futures transactions.  However, it is provided that such exclusive jurisdiction would not supersede or limit the jurisdiction of the Securities and Exchange Commission or other regulatory authorities.

> The Committee amendment retains the provision of the House bill but adds three clarifying amendments.  *The clarifying amendments make clear that (a) the Commission's jurisdiction over futures contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; (b) the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies . . . .*

S. Rep. No. 93-1131, at 6 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 5843, 5848 (emphasis added).  *Accord* H.R. Rep. No. 93-1383, at 35-36 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 5894, 5897.

Significantly, the Conference Committee rejected a provision in the House bill that would have provided that the CFTC's exclusive jurisdiction did *not* "supersede or limit the jurisdiction of the Securities and Exchange Commission or other regulatory authorities" in favor of a broad amendment providing that the CFTC's exclusive jurisdiction *does* "supersede[] State as well as Federal agencies" with respect to on-exchange futures trading.  *Id.*

15

The broad exclusive jurisdiction language in the Conference Committee amendment was included in what became CEA Section 2(a)(1)(A). As this Court has recognized, "[t]he aim of this provision … was to 'to avoid unnecessary overlapping and duplicative regulation.'" *Ken Roberts,* 276 F.3d at 588; *quoting* 120 Cong. Rec. H 34,736 (Oct. 9, 1974) (remarks of House Agriculture Committee Chairman and co-sponsor W.R. Poage).[7]

Indeed, in its consideration of the Dodd-Frank Act in 2010, Congress did *consider* a proposed amendment to the CEA that would have expressly modified the CFTC's exclusive jurisdiction with respect to FERC. The broadly-worded amendment would have altered Section 2(a)(1)(C) of the CEA to provide that notwithstanding the CFTC's exclusive jurisdiction with respect to futures and

---

[7] The legislative history of later amendments to the CEA further demonstrates Congress's intent to maintain and in some instances expand the CFTC's exclusive jurisdiction. For example, the Report of the Senate Committee on Agriculture, Nutrition and Forestry on 1982 amendments to the CEA states that "[a]ctivities that are subject to the comprehensive regulatory powers of the Commission, including *exchange-traded futures*, foreign futures (except as otherwise specified by the Commission), authorized commodity options, and regulated leverage transactions will *remain within the Commission's exclusive jurisdiction*." S. Rep. No. 97-384, at 27 (1982) (emphasis added). In 2008, Congress *expanded* the CFTC's exclusive jurisdiction to cover "significant price discovery contracts" traded on markets not otherwise subject to comprehensive CFTC regulation. CFTC Reauthorization Act of 2008, P.L. 110-246, § 13203(c), 122 Stat. 1651. And in the 2010 Dodd-Frank Act, Congress again *expanded* the CEA's exclusive

---footnote continued on next page---

swaps, nothing in the CEA "shall be construed . . . to supersede or limit the authority of [FERC] under the . . . Natural Gas Act (15 U.S.C. 717 et seq.)."  156 Cong. Rec. S3890 (daily ed. May 18, 2010).  The amendment was approved by the Senate on a voice vote, *Id.*, but was ultimately rejected in the Conference Committee.  H.R. Rep. No. 111-517, at 305 (2010) (Conf. Rep.); 156 Cong. Rec. H5054 (daily ed. June 29, 2010).  Congress instead enacted language stating that nothing in the new legislation affects the pre-existing authority of FERC, but also leaving unaffected the exclusive jurisdiction of the CFTC (as relevant to this case). Section 722(g) of the Dodd-Frank Act states:

> "Nothing in the Wall Street Transparency and Accountability Act of 2010 or the amendments to the Commodity Exchange Act made by such Act shall limit or affect any statutory enforcement authority of the Federal Energy Regulatory Commission pursuant to section 222 of the Federal Power Act and section 4A of the Natural Gas Act [15 U.S.C. § 717c-1] that existed prior to the date of enactment of the Wall Street Transparency and Accountability Act of 2010." [8]

That Congress recently considered and rejected a proposal that would have expressly carved out an exception to the CFTC's exclusive jurisdiction for FERC-

---

jurisdiction to include certain swaps traded on CFTC-regulated entities.  Pub. L. No. 111-203, § 722(a); codified at 7 U.S.C.A. § 2(a)(1)(A) (2011).

[8] Pub. L. No. 111-203, § 722(g); 124 Stat. 1376, 1674 (2010), codified at 15 U.S.C.A. § 8322 (2011).

initiated actions under the NGA further evinces Congress's intent to leave undisturbed its longstanding grant of exclusive jurisdiction to the CFTC.

### C. Courts Have Consistently Recognized The CFTC's Exclusive Jurisdiction Over Futures Trading On Futures Exchanges Regulated By The CFTC

In light of the clarity of the statutory language and legislative history, it should come as no surprise that federal courts have repeatedly recognized the CFTC's exclusive jurisdiction with respect to futures trading on CFTC-regulated futures exchanges vis-à-vis other federal agencies. The decisional law on the subject stands unambiguously for the proposition that the CFTC is the only federal regulatory agency authorized to set standards regarding on-exchange futures trading and to determine the lawfulness of such trading through enforcement or other actions.

### 1. This Court's Decision In *Ken Roberts* Is Fatal To FERC's Position

In the most recent case construing the CEA's exclusive jurisdiction over on-exchange futures trading, this Court made clear that conduct surrounding the "buying and selling of futures" on CFTC-regulated exchanges falls squarely within the CFTC's exclusive jurisdiction. *Ken Roberts,* 276 F.3d at 590.

*Ken Roberts* addressed the permissibility of a Federal Trade Commission ("FTC") investigation into whether the advertising of "investor-education" courses constituted a deceptive trade practice under the Federal Trade Commission Act.

18

Because the courses covered on-exchange futures trading, Roberts argued that the FTC inquiry exceeded its jurisdiction and that the CFTC was the only agency empowered to investigate the lawfulness of the advertising at issue.  This Court rejected Roberts' argument, holding that the advertising was sufficiently far afield from the actual buying and selling of futures contracts so as to fall outside the CFTC's exclusive jurisdiction.  *Id.* at 590-92.  But in reaching that conclusion, the Court left no doubt that the actual buying and selling of futures on a regulated exchange --- the conduct at issue here --- falls squarely within the CFTC's exclusive jurisdiction.  *Id.* (holding that the accounts, agreements and transactions delineated in Section 2(a)(1)(A) "describe business deals that involve the buying and selling of futures" and "a set of arrangements directly related to the actual sale of commodities futures").

Applying the reasoning of *Ken Roberts* to this case is a straightforward exercise.  There is no question that NYMEX is a contract market within the meaning of Section 2(a)(1)(A) and the *Ken Roberts* decision.  Nor is there any question that the futures trading at the heart of FERC's case against Mr. Hunter was conducted on NYMEX.  App. 129, ¶ 2; 130, ¶ 5 (OSC); A. 799-802 (Order Affirming ALJ decision).  And there is likewise no question that the conduct by Mr. Hunter that forms the basis for FERC's case is the "*selling* [of] an extraordinary amount of these [futures] contracts during the last thirty minutes of

19

trading before these futures contracts expired … with the purpose and effect of driving down the settlement price." App. 130, ¶ 5 (emphasis added); A. 799 ¶ 6. Because FERC has adjudicated the lawfulness of Mr. Hunter's trading of futures contracts on the NYMEX and, ultimately, penalized him for that trading, FERC has plainly exercised jurisdiction with respect to on-exchange futures trading. *Ken Roberts* is therefore fatal to FERC's arguments.

### 2. Other Decisions Refute FERC's Position

*Ken Roberts* is but the latest in an unbroken line of federal court decisions affirming the CFTC's exclusive jurisdiction over futures trading on CFTC-regulated exchanges. Relying on the text of the exception clause in the second sentence of Section 2(a)(1)(A) ("[e]xcept as hereinabove provided . . ."), *supra* at 12, courts have consistently rejected the very argument that FERC makes --- that other federal agencies may exercise concurrent regulatory jurisdiction regarding the matters described in the first sentence. App. 235-36, ¶¶ 52-56. As one court stated, this argument is "simply invalid." *SEC v. Univest, Inc.,* 405 F. Supp. 1057, 1058 (N.D. Ill. 1975), *remanded without op.,* 556 F.2d 584 (7th Cir. 1977) (table decision).

In *Univest*, the SEC brought an enforcement action in federal court alleging violations of securities laws based, in part, on the defendant's trading in options on

futures contracts.  *Id.*  Relying on Section 2(a)(1)(A), the district court dismissed the claims involving the options on futures.  As the court explained:

> The key phrase in this [savings clause] proviso is the introductory one; I must assume that it means exactly what it says. The fact is that the statements 'hereinabove [provided]' do limit the jurisdiction of the S. E. C. with regard to commodity futures trading. In effect, those statements transfer jurisdiction from the S. E. C. to the new Commodity Futures Trading Commission.

*Id.* at 1058.  The court therefore rejected the argument that the SEC possessed concurrent jurisdiction to bring enforcement actions regarding futures trading.

Around the same time, the Tenth Circuit considered whether to dismiss an SEC enforcement action based on a scheme involving options on futures that occurred before the enactment of Section 2(a)(1)(A).  *SEC v. American Commodity Exch., Inc.*, 546 F.2d 1361 (10th Cir. 1976).  The SEC charged violations of the securities laws and SEC Rule 10(b).  *Id.* at 1363.  Relying on the text of Section 2(a)(1)(A), the court made clear that the CFTC's jurisdiction is exclusive with respect to futures trading that occurs after the 1974 Commodity Exchange Act amendments.  *Id.* at 1367-69.

The Seventh Circuit upheld the CFTC's exclusive jurisdiction in several cases in the 1980s.  In *Board of Trade of the City of Chicago v. SEC*, 677 F.2d 1137, 1145-49 (7th Cir. 1982), *vacated as moot on other grounds*, 459 U.S. 1026 (1982) (appeal mooted because Congress amended CEA to exempt transactions

21

that were at issue), a case involving exchange-traded options on exempt securities, the court held that the "[e]xcept as hereinabove provided" clause did not authorize the SEC's assertion of jurisdiction over certain financial instruments that had characteristics of futures contracts. *Id.* Similarly, in *Chicago Mercantile Exch. v. SEC,* 883 F.2d 537, 550 (7th Cir. 1989), the court held that the SEC lacked jurisdiction to approve trading of futures contracts on securities. [9]

As this Court and others have repeatedly held, the exclusive jurisdiction provision was adopted to further one of the principal goals of Congress in enacting the CEA and creating the CFTC – to bring uniformity to the regulation of the complex futures markets through a single regulator. *Ken Roberts,* 276 F.3d at 591 (legislative history "repeatedly emphasizes that the CFTC's jurisdiction was 'to be exclusive with regard to the trading of futures on'" futures exchanges regulated by the CFTC) (internal citations omitted); *Curran,* 456 U.S. at 387 (exclusive jurisdiction provision was meant to "consolidate federal regulation of commodity futures trading in the Commission"); *Messer*, 847 F.2d at 676 ("different result

---

[9] Even in cases not involving other regulatory agencies, other circuit courts have determined that CEA Section 2(a)(1)(A) is a jurisdictional bar to private securities actions involving futures trading. *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 676 (11th Cir. 1988); *Point Landing, Inc. v. Omni Capitol Int'l, Ltd.,* 795 F.2d 415, 421-22 (5th Cir. 1986), *aff'd on other grounds,* 484 U.S. 97 (1987); *but see*

---footnote continued on next page---

would 'defeat[] the fundamental congressional design in revamping the Commodity Exchange Act in 1974 and granting exclusive jurisdiction to the new CFTC – to avoid a duplicative or contradictory regulatory structure'") (internal citations omitted); *SEC v. American Commodity Exch.*, 546 F.2d at 1369 ("Congressional intent [was] to avoid overlapping" jurisdiction); *Board of Trade of the City of Chicago v. SEC*, 677 F.2d at 1152 ("Congress quite clearly intended 'to create one federal agency with the expertise to regulate the commodities industry'") (internal citation omitted); *American Agric. Movement, Inc. v. Board of Trade of City of Chicago,* 977 F.2d 1147, 1155-57 (7th Cir. 1992), *aff'd in part, rev'd in part on other grounds by Sanner v. Chicago Bd. of Trade,* 62 F.3d 918 (7th Cir. 1995) (same).[10]  FERC's assertion of jurisdiction would result in the very overlapping, duplicative, and inconsistent regulation of on-exchange futures trading that Congress intended to preclude.

---

*Mordaunt v. Incomco,* 686 F.2d 815, 816 (9th Cir. 1982) (determining that the CEA's exclusive jurisdiction provision did not bar private securities actions).

[10] *See also* Philip F. Johnson, *The Perimeters of Regulatory Jurisdiction Under the Commodity Futures Trading Commission Act,* 25 Drake L. Rev. 61 (1975-76); Philip F. Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy,* 29 Vand. L. Rev. 1 (1976) (describing legislative history and observing that Congress clearly intended for CFTC to be sole regulator of futures industry).

### D.   FERC's Assertion that the CFTC Does Not Have Exclusive Jurisdiction Cannot Be Reconciled With The CEA, Its Legislative History, Or Case Law

FERC acknowledges, as it must, that the CFTC "has exclusive jurisdiction over [futures] transactions" on CFTC-regulated exchanges.  App. 231, ¶ 47.  FERC nevertheless contends that the CFTC's exclusive jurisdiction over futures transactions does not apply to "manipulative conduct involving futures transactions."  App. 232, ¶ 47.  According to FERC, this is because "manipulation does not involve a mutual understanding or meeting of the minds necessary to consummate an 'account, agreement, or transaction.'"  App. 233, ¶ 49.  FERC also contends that the CFTC has exclusive jurisdiction over the markets it regulates, but not manipulation in those markets. App. 238-39, ¶ 58 (CFTC's exclusive jurisdiction covers only the "day-to-day aspects of futures trading," such as the terms or conditions of futures contracts, the operating rules of exchanges, and the handling of traders' commodity accounts).

FERC's contentions cannot pass muster.  First, on its face, the CEA does not limit the CFTC's exclusive jurisdiction to the types of truncated "day-to-day" matters described by FERC.  Nor does the exclusive jurisdiction provision exclude the buying or selling of futures contracts when manipulative.  Instead, the CEA broadly extends the CFTC's exclusive jurisdiction to all matters "with respect to" the trading of futures contracts on designated exchanges.  7 U.S.C. § 2(a)(1)(A).

24

This necessarily includes the exclusive authority to set standards regarding on-exchange futures trading and to adjudicate the lawfulness of that trading, including the determination whether it is manipulative.  Second, the legislative history of Section 2(a)(1)(A) demonstrates that Congress intended that the CFTC be the sole regulator of futures trading on the exchanges it regulates.  No plausible claim can be made that this does not include the buying and selling of futures contracts --- the very conduct at issue here --- when it is manipulative.  A transaction does not cease to be a transaction simply because one of the parties to the transaction intends to create an artificial price through that transaction.  Third, *Ken Roberts* itself makes clear that, while there may be *some* conduct that is so far afield from futures trading that it does not fall within the exclusive jurisdiction provision, the buying or selling of futures contracts on a CFTC-regulated exchange is a "transaction" at the very core of CFTC's mission and subject to its exclusive jurisdiction.  276 F.3d at 590-92.

## II.    FERC's Anti-Manipulation Authority In The Natural Gas Act Does Not Limit The CFTC's Exclusive Jurisdiction

Nothing in the 2005 EPAct, amending the NGA, even remotely affects the longstanding exclusive jurisdiction of the CFTC with respect to futures trading on designated contract markets such as NYMEX.  FERC's assertions to the contrary misread both the text and legislative history of the EPAct.

25

Section 315 of the EPAct added a new Section 4A to the Natural Gas Act, which states that:

> It shall be unlawful for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission, any manipulative or deceptive device or contrivance (as those terms are used in section 78j(b) of this title) in contravention of such rules and regulations as the Commission may prescribe as necessary in the public interest or for the protection of natural gas ratepayers. Nothing in this section shall be construed to create a private right of action.

15 U.S.C. § 717c-1.

In January 2006, pursuant to this new authority, FERC adopted Rule 1c.1, which states, in relevant part:

> (a) It shall be unlawful for any entity, directly or indirectly, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission, (1) To use or employ any device, scheme, or artifice to defraud, (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) To engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any entity.

18 C.F.R. § 1c.1.

### A.    Nothing In The EPAct Repeals Or Otherwise Modifies The CFTC's Exclusive Jurisdiction

The only provision of the EPAct that mentions the CFTC or the CEA makes clear that the EPAct does not in any way modify the CFTC's exclusive jurisdiction over futures trading on designated contract markets.  Recognizing the distinctions as well as the interrelationship between natural gas futures markets and physical natural gas markets, Congress directed the CFTC and FERC to enter into a Memorandum of Understanding with respect to the sharing of information.[11]   15 U.S.C. § 717t-2(c)(1).  Section 23 of the Natural Gas Act reads:

(c) Information Sharing

(1) Within 180 days of August 8, 2005, enactment of this section, the [Federal Energy Regulatory] Commission shall conclude a memorandum of understanding with the Commodity Futures Trading Commission relating to information sharing, which shall include, among other things, provisions ensuring that information requests to markets within the respective jurisdiction of each agency are properly coordinated to minimize duplicative information requests, and provisions regarding the treatment of proprietary trading information.

(2) *Nothing in this section may be construed to limit or affect the exclusive jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act (7 U.S.C. 1 et seq.).*

---

[11] App. 49-53.

15 U.S.C. § 717t-2(c) (emphasis added).[12]

The EPAct thus expressly states that the purpose of the Memorandum of Understanding is to facilitate the sharing of information regarding matters committed to the jurisdiction of each agency (not both agencies), and further, that the information-sharing requirement does not alter or affect in any way the CFTC's exclusive jurisdiction. Because 15 U.S.C. § 717t-2(c) is the only provision of the EPAct that mentions the CFTC or the CEA, it makes perfect sense that Congress chose to include there (and not elsewhere) a savings clause making clear that the CFTC's exclusive jurisdiction was unaffected.

## B.     Acceptance Of FERC's Position Would Result In Partial Repeal By Implication Of The CEA's Exclusive Jurisdiction Provision

As FERC necessarily acknowledges, the statutory text of EPAct's anti-manipulation provision nowhere carves out an exception to the exclusive jurisdiction provision in the CEA. FERC nevertheless claims that the EPAct, *sub silentio*, authorizes the agency to adjudicate the lawfulness of futures trading on designated contract markets. This argument must fail. For had Congress intended

---

[12] There are several provisions in the Commodity Exchange Act that require or contemplate the sharing of information regarding futures trading with other federal agencies. *See, e.g.*, 7 U.S.C. § 2(a)(9)(requiring information sharing); 7 U.S.C. § 12(e)(permitting information sharing); 7 U.S.C. § 16(a)(encouraging cooperation

---footnote continued on next page---

for the EPAct to reverse 30 years of unbroken precedent regarding the scope of the CFTC's exclusive jurisdiction, it would have spoken clearly and unambiguously. *United States v. Fausto*, 484 U.S. 439, 453 (1988) ("[i]t can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change.").  Since Congress did not, the Court may not infer that it intended to modify the CEA's exclusive jurisdiction provision.

The Supreme Court has "repeatedly stated" that repeals and amendments by implication are strongly disfavored.  *Carcieri v. Salazar*, 555 U.S. 379, 394 (2009). They will not be found unless a Congressional intent to repeal "is clear and manifest."   *Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (citation omitted); *Agri Processor Co. v. NLRB*,  514 F.3d 1, 4 (D.C. Cir. 2008) (same); *see Carcieri*, 555 U.S. at 394 (repeal by implication may be found only "where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute") (internal citations and quotations omitted).  The Supreme Court has rarely found repeal or amendment of a federal statutory provision by implication.  *Branch v. Smith*, 538 U.S. 254, 293 (2003) (observing that it has "not found *any* implied

_____

with other agencies).   None of these provisions has been read to create an exception to the CFTC's exclusive jurisdiction.

repeal of a statute since 1975 … [a]nd outside the antitrust context" has not "found an implied repeal of a statute since 1917") (emphasis in original) (internal citations omitted).  And the Supreme Court has affirmatively found *no* implied repeal where, as here, one statute *expressly* gives an agency "exclusive" authority and there is no indication in a later enacted statute that it was intended to limit the agency's exclusive authority and subject the regulated entity to "dual regulatory jurisdiction" on "precisely the same aspects of its conduct."  *Universal Interpretative Shuttle Corp. v. Washington Metropolitan Area Transit Comm'n,* 393 U.S. 186, 189, 193 (1968) (no implied repeal of long-standing statute giving the Department of Interior "exclusive charge and control" to contract for national Mall concessionaires, including tour buses, by later enacted statute creating a commission to regulate mass transit in the City of Washington).

No partial repeal or amendment by implication can be found here.  There is no evidence of any Congressional intent to repeal or limit Section 2(a)(1)(A) of the CEA, much less any that is "clear and manifest."  The CEA and NGA are not in conflict, much less irreconcilable conflict, because nothing in the NGA alters the CFTC's exclusive jurisdiction.  And FERC makes no claim, nor could it, that the NGA "covers the whole subject" of the CEA or was clearly intended as a substitute for it.

30

FERC instead repeatedly points to the broad language that Congress used in EPAct's anti-manipulation provision and its incorporation of provisions from the federal securities laws.  App. 213-14, ¶ 17 and n.39.  But it is a settled canon of statutory construction that "a precisely drawn, detailed statute pre-empts more general remedies."  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976).  The CEA is a precisely drawn, detailed statute governing the futures industry, *Curran,* 456 U.S. at 360-67, 386-87, and it includes a specific exclusive jurisdiction provision to assure that on-exchange futures trading is not subject to overlapping and potentially inconsistent government standards.  The EPAct's general anti-manipulation prohibition is insufficient to create an exception to the CFTC's exclusive jurisdiction.  And it would be manifestly incorrect to find repeal by implication in the instant case, especially given that Congress clearly stated that the only EPAct provision mentioning the CFTC was not intended to affect the CFTC's exclusive jurisdiction.

FERC also contends that its construction is necessary to comport with the canon of statutory construction that statutes be harmonized.  App. 237-38, ¶ 57. But FERC's purported harmonization reads into the EPAct something that is not there and writes out of the CEA something that is there.  That is not harmonization. *See Agri Processor Co.*, 514 F.3d at 4 (rejecting claim that provision in Immigration Reform and Control Act prohibiting employers from hiring

31

undocumented aliens impliedly amended National Labor Relation Act's definition of employee to exclude them when the statute said nothing of the sort and could otherwise be given effect).

Moreover, contrary to FERC's contention, giving recognition to the exclusive jurisdiction provision of the Commodity Exchange Act in this case is fully consistent with the canon of statutory construction that statutes be construed harmoniously.   Such recognition respects the anti-manipulation authority that Congress has given FERC in the physical natural gas and electricity markets that were the focus of the EPAct, while also respecting the long-established Congressional judgment that on-exchange futures trading be subject to a single regulator, the Commodity Futures Trading Commission.

## C.     A Comprehensive Savings Clause In The EPAct Was Unnecessary

FERC asserts that Congress's failure to include in the EPAct an even broader savings clause regarding the CFTC's exclusive jurisdiction, or to place a savings clause in the EPAct's anti-manipulation provision, means that Congress must have intended to modify the CFTC's exclusive jurisdiction.  App. 240, ¶ 60. FERC references a House Committee Report's proposal to include an EPAct provision stating that nothing in the Natural Gas Act should be construed to modify the CFTC's exclusive jurisdiction.  *Id., citing* H.R. Rep. No. 109-49 at 7 (2005). FERC concludes that the failure to adopt this proposal in the legislation as enacted

shows that Congress did not intend to grant the CFTC sole authority over manipulative futures trading on designated contract markets.  App. 240, ¶ 60.

But in order to infer such Congressional intent from the absence of a universal savings clause, there would have to be clear evidence that Congress actually granted FERC jurisdiction over on-exchange futures trading in the first place.  *Shomberg v. United States*, 348 U.S. 540, 546 (1955) ("Only where something in the new law introduces a change, thereby affecting one's status under the old law, is the savings clause called into play.").  There is nothing in the EPAct that introduces any change in the scope of the CFTC's exclusive jurisdiction that would make a savings clause pertinent.  Because the EPAct does not grant FERC any authority over on-exchange futures trading, it was wholly unnecessary for Congress to include a universal savings clause.  *See Bullcreek v. Nuclear Regulatory Comm'n*, 359 F.3d 536, 542 (D.C. Cir. 2004) (text of statute under review demonstrated that Congress neither repealed nor superseded agency's powers that originated in an earlier and different statute).

FERC's argument also fails to take account of the actual text of the never-enacted provision, as well as changes in the structure of the bill that ultimately became the EPAct.  App. 240, ¶ 60.  The House proposed to include a universal savings clause in the Natural Gas Act in April 2005, several months before the EPAct was passed.  The provision was to be part of a section of the bill addressing

33

information requests directed to CFTC-regulated futures exchanges.  The proposed

section read:

> (c) Jurisdiction of the CFTC.  The Natural Gas Act (15 U.S.C. 717 et seq.) is amended by adding at the end:
>
> SEC. 26. JURISDICTION.  This Act shall not affect the exclusive jurisdiction of the Commodity Futures Trading Commission with respect to accounts, agreements, contracts, or transactions in commodities under the Commodity Exchange Act (7 U.S.C. 1 et seq.).  Any request for information by the [Federal Energy Regulatory] Commission to a designated contract market, registered derivatives transaction execution facility, board of trade, exchange, or market involving accounts, agreements, contracts, or transactions in commodities (including natural gas, electricity, and other energy commodities) within the exclusive jurisdiction of the Commodity Futures Trading Commission shall be directed to the Commodity Futures Trading Commission, which shall cooperate in responding to any information request by the Commission.

H.R. Rep. No. 109-49, at 11 (2005).

This provision contemplated that if FERC needed information from a futures

exchange (for example, because futures positions created the motive for a

manipulative scheme in physical markets subject to FERC jurisdiction), FERC

would provide the request to the CFTC, which then would make the request of the

futures exchange that it regulates.  However, by late July 2005, Congress had

dropped this provision in favor of a directive that the two agencies cooperate with

respect to information requests and enter into a Memorandum of Understanding on

34

that subject.  15 U.S.C. § 717t-1(c).  As discussed above, the information-sharing

provision that was enacted into law does contain an express savings clause making

clear that the CFTC's exclusive jurisdiction is unaffected by the provision.  Rather

than abandon the universal savings clause, Congress simply changed the

substantive provision to which the clause was attached and carried the savings

clause with it.  There is no merit, then, to FERC's conclusion that Congress's

decision not to include a universal savings clause somehow authorizes FERC to

exercise jurisdiction over on-exchange futures trading.

###    D.    The Legislative History Of The EPAct Reveals That Congress Intended To Ban Manipulation In Physical Natural Gas Markets, Not Futures Markets

FERC cites to the EPAct's legislative history as evidence that Congress

expanded FERC's authority so as to reach "manipulative trading of natural gas

futures contracts" when it finds that such trading has an effect on wholesale natural

gas prices.  FERC combines floor statements from two different legislative

sessions:  (1) the 108th Congress, which considered but never enacted the EPAct

of 2003, and (2) the 109th Congress, which enacted the EPAct of 2005.  App. 213-

14, ¶¶ 17-18; 239-40, ¶ 59.  The combination of these statements, FERC asserts,

"confirms that Congress expanded [FERC's] jurisdiction" and placed "an

additional cop on the [futures] beat alongside the CFTC…"  App. 239-40, ¶ 59.

But far from evincing any Congressional intent to expand FERC's authority into

the futures markets, the EPAct's legislative history makes clear that Congress's focus was on preventing manipulative conduct in the physical markets that was already within FERC's jurisdiction.

FERC cites to Congressional floor statements as proof that Congress granted FERC "broad authority to prohibit manipulation affecting jurisdictional markets…"  App. 213-14, ¶ 17; 239-40, ¶ 59.  But nowhere in these statements is there any indication that Congress intended for FERC to exercise its new anti-manipulation authority with respect to on-exchange futures trading.  None of these statements even mentions futures trading on the NYMEX or any other futures exchange, or any perceived gap in enforcement efforts against manipulation in the futures markets, or any need for additional investigative or prosecutorial resources to combat manipulative futures trading.

One of the rare floor statements that mentions the CFTC or futures markets spoke not to the anti-manipulation provision, but rather to the need for information sharing between the CFTC and FERC.  In this vein, Representative Barton acknowledged the CFTC's jurisdiction over futures exchanges and the importance of protecting proprietary data collected by CFTC's jurisdictional entities:

> Mr. Chairman, I thank the gentleman for raising these concerns and agree with the gentleman that market transparency is an absolute need for an affordable energy supply and that the protection of proprietary data is a must for the efficient and effective use of U.S. futures markets.  Regulation of United States futures exchanges

36

> is certainly within the jurisdiction of the CFTC. I give the gentleman my assurances I will work with him on language that reflects the Commodity Futures Trading Corporation's [sic] jurisdiction in its vital role in market transparency.[13]

151 Cong. Rec. H 2399 at 2427 (daily ed. April 21, 2005). Nothing in this statement supports FERC's position.

Nothing, then, in the text or legislative history of the EPAct evinces any intention by Congress to change the longstanding scope of the CFTC's exclusive jurisdiction over futures trading on designated contract markets, whether or not that trading is alleged to be manipulative. Accepting FERC's interpretation of the EPAct would effectively read the exclusive jurisdiction provision out of the Commodity Exchange Act with respect to natural gas futures contracts. Because there is no indication that Congress intended such a result, FERC's arguments regarding the legislative history of the EPAct should be rejected.

## CONCLUSION

Over 35 years ago, Congress expressly and unambiguously granted the CFTC exclusive jurisdiction with respect to futures trading on futures exchanges. This Court and others have repeatedly held that the CFTC's exclusive jurisdiction

---

[13] Representative Barton's comments were in response to Representative Goodlatte's concerns about protecting proprietary information.

precludes other federal agencies from asserting jurisdiction over futures trading on CFTC-regulated markets. Although Congress amended the NGA in 2005 to prohibit manipulative and deceptive practices in FERC's jurisdictional markets, nothing in the text or legislative history of the EPAct indicates that Congress intended to alter the CFTC's exclusive jurisdiction and permit FERC to exercise its new anti-manipulation authority over futures trading on futures exchanges. Accordingly, the Court should determine that FERC may not exercise jurisdiction with respect to futures trading on CFTC-regulated futures markets, including the transactions here.

Respectfully submitted,

COMMODITY FUTURES TRADING COMMISSION

Dan M. Berkovitz
General Counsel

Jonathan L. Marcus
Deputy General Counsel

/s/ Mary T. Connelly
Mary T. Connelly
Assistant General Counsel
Office of the General Counsel
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
(202) 418-5866
mconnelly@cftc.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and D.C. Cir. R. 32 (a)(2)(B) because this brief contains 8,416 words, not including the parts of the brief excluded under Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Cir. R. 32(a)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 14-point Times New Roman type.

April 25, 2012                          /s/ Mary T. Connelly
                                        Mary T. Connelly
                                        Assistant General Counsel
                                        Commodity Futures Trading Commission

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), D.C. Cir. R. 25, and this Court's

Administrative Order Regarding Electronic Case Filing, I hereby certify that on

April 25, 2012, copies of this brief were served electronically and by UPS, next-day

delivery, on the counsel below:

Michael Kim (Michael.kim@ kobrekim.com)
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022

Lee Anne Bortner (Leanne.bortner@kobrekim.com)
Andrew Lourie (andrew.lourie@kobrekim.com)
Kobre & Kim LLP
1919 M St., NW
Washington, DC 20036

Melanie Oxhorn (moxhorn@gmail.com)
101 East State St., Suite 128
Ithaca, NY 14850

Robert Solomon (Robert.solomon@ferc.gov)
Robert M. Kennedy, Jr. (Robert.kennedy@ferc.gov)
Lona Perry (Lona.perry@ferc.gov)
Federal Energy Regulatory Commission
Office of the Solicitor General
888 First Street, N.E.
Washington, D.C.  20406


/s/ Mary T. Connelly
Mary T. Connelly
Assistant General Counsel
Commodity Futures Trading Commission

**ADDENDUM**

## ADDENDUM TABLE OF CONTENTS

Commodity Exchange Act

    7 U.S.C. § 2(a)(1)(A)(2006)…………………………………………………..ii

Natural Gas Act, as amended by the Energy Policy Act of 2005

    15 U.S.C. § 717c-1(2006).……………………………………………...iii

    15 U.S.C. § 717t-2(c)(1) (2006) ...………………………………………...iii

# COMMODITY EXCHANGE ACT

## 7 USC § 2(a)(1)(A) (2006)

§ 2. Jurisdiction of Commission; liability of principal for act of agent; Commodity Futures Trading Commission; transaction in interstate commerce

(a) Jurisdiction of Commission; Commodity Futures Trading Commission

(1) Jurisdiction of Commission

(A) In general

The Commission shall have exclusive jurisdiction, except to the extent otherwise provided in subparagraphs (C) and (D) of this paragraph and subsections (c) through (i) of this section, with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty"), and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated or derivatives transaction execution facility registered pursuant to section 7 or 7a of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title. Except as hereinabove provided, nothing contained in this section shall

(I)   supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or

(II)  restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws. Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State.

ii

## NATURAL GAS ACT, AS AMENDED BY ENERGY POLICY ACT OF 2005

## 15 U.S.C. § 717c-1 (2006)

It shall be unlawful for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission, any manipulative or deceptive device or contrivance (as those terms are used in section 78j(b) of this title) in contravention of such rules and regulations as the Commission may prescribe as necessary in the public interest or for the protection of natural gas ratepayers.  Nothing in this section shall be construed to create a private right of action.

## 15 U.S.C. § 717t-2(c)(1) (2006)

 (c) Information Sharing

(1) Within 180 days of August 8, 2005, enactment of this section, the [Federal Energy Regulatory] Commission shall conclude a memorandum of understanding with the Commodity Futures Trading Commission relating to information sharing, which shall include, among other things, provisions ensuring that information requests to markets within the respective jurisdiction of each agency are properly coordinated to minimize duplicative information requests, and provisions regarding the treatment of proprietary trading information.

(2) Nothing in this section may be construed to limit or affect the exclusive jurisdiction of the Commodity Futures Trading Commission under the Commodity Exchange Act (7 U.S.C. 1 et seq.).